IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JENNIFER F.,[1]                                              Case No. 3:22-cv-00004-SB

                Plaintiff,                        **OPINION AND ORDER**

      v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

                Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

      Jennifer F. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of her applications for a period of disability, Disability

Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C.

§ 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party and the non-governmental party's family members in this case.

U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in April 1982, making her thirty-six years old on October 26, 2018, her amended alleged disability onset date. (*See* Tr. 13, 22, 31, 33.) Plaintiff is a high school graduate and has past relevant work experience as a customer service representative. (*Id.* at 21, 35, 255.) In her applications, Plaintiff alleges disability due to fibromyalgia, posttraumatic stress disorder

("PTSD"), anxiety, hypothyroidism, attention deficit disorder ("ADD"), carpal tunnel syndrome, temporomandibular joint dysfunction ("TMJ"), migraines, inflammation, and breathing issues. (*Id.* at 33, 71, 89.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on February 18, 2020, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 13.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on December 7, 2020. (*Id.* at 31-51.) On February 12, 2021, the ALJ issued a written decision denying Plaintiff's applications. (*Id.* at 13-23.) On November 12, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

///

PAGE 3 – OPINION AND ORDER

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id*. at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 13-23.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 26, 2018, her amended alleged onset date. (*Id.* at 15.) At step two, the ALJ determined that Plaintiff suffers from the following severe, medically determinable impairments: "[F]ibromyalgia; degenerative disc disease of the cervical spine; [PTSD] . . . ; major depressive disorder; and generalized anxiety disorder[.]" (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 16.)

The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can occasionally climb ramps and stairs, balance, stoop, crouch, crawl, kneel, reach overhead, and have contact with co-workers; (2) Plaintiff can never have contact with the general public, engage in teamwork activities, or climb ladders, ropes, or scaffolds; (3) Plaintiff can frequently push and pull with her bilateral upper extremities; and (4) Plaintiff needs to be limited to "simple, routine [and] repetitive tasks with few changes and a reasoning level of [one to two]." (*Id.* at 18.) At step four, the ALJ

concluded that Plaintiff was unable to perform her past relevant work as a customer service representative. (*Id.* at 21.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as an office cleaner, officer helper, and "hand packager, inspector." (*Id.* at 22) (caps omitted).

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred in three principal ways. First, Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. (Pl.'s Opening Br. ("Pl.'s Br.") at 8-13, ECF No. 15.) Second, Plaintiff argues that the ALJ erred by failing to address the lay witness testimony provided by Plaintiff's sister, Stacey F. (*Id.* at 8, 16-17.) Finally, Plaintiff argues that the ALJ improperly rejected the opinion of the consultative examiner, Tatsuro Ogisu, M.D. ("Dr. Ogisu"). (*Id.* at 8, 13-16.)

As explained below, the Court finds that the ALJ's decision is free of harmful legal error and supported by substantial evidence in the record, and therefore affirms the Commissioner's decision.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the

claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 19, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ satisfied that standard here.

### 1.    The ALJ's Specific Mental Health-Related Findings

Plaintiff initially argues that "reasons the ALJ relied upon to reject [her] allegations were not clear and convincing," because the ALJ merely "summarized medical evidence without explaining [how] that evidence . . . undermined [her] allegations." (Pl.'s Br. at 10.) Plaintiff in turn argues that the ALJ did not satisfy the Ninth Circuit's specificity requirement. (*Id.* at 10; *see also id.* at 13, arguing that it is improper for an ALJ to "simply state[] her non-credibility conclusion and then summarize[] evidence," and the ALJ's analysis amounted to "exactly th[is] type of error").

The Court finds unpersuasive Plaintiff's threshold argument that the ALJ's analysis did not meet the Ninth Circuit's specificity requirement. Plaintiff is correct that Ninth Circuit case law "requires the ALJ to specifically identify the testimony from a claimant she or he finds not to be credible and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d

1266, 1277 (9th Cir. 2020) (simplified); *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that general findings are insufficient because the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints," and concluding that the ALJ's findings were "insufficient to meet 'our requirements of specificity'") (simplified). That does not mean that an ALJ must "perform a line-by-line exegesis of the claimant's testimony," or "draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277. But Ninth Circuit precedent "plainly requires" that an ALJ do more than "offer[] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted).

Lambert and cases applying *Lambert* are instructive as to the level of specificity that the Ninth Circuit requires. In *Lambert*, the ALJ cited four high-level reasons for discounting the claimant's testimony:

> First, [the claimant] had 'not generally received the type of medical treatment one would expect for a totally disabled individual.' Second, the 'record reflect[ed] significant gaps in [the claimant's] history of treatment and relatively infrequent trips to the doctor for the allegedly disabling symptoms.' Third, [the claimant's] 'use of medications does not suggest the presence of impairments which is more limiting than found in this decision.' And finally, 'medications have been relatively effective in controlling [the claimant's] symptoms.'

980 F.3d at 1270. The Ninth Circuit held that these four reasons were legally insufficient because they did not identify what parts of the claimant's testimony were not credible and why, and the ALJ's discussion was "brief" and equated to offering general, non-specific conclusions. *Id.* at 1277.

By contrast, in *Young v. Saul*, 845 F. App'x 518, 519 (9th Cir. 2021), the Ninth Circuit rejected the claimant's "argument that, by failing expressly to mention [the claimant's] assertion that his back pain created a need for him to take weeks off from work at a time, the ALJ thereby overlooked that testimony and failed to give reasons to discount it." *Id.* The Ninth Circuit

explained that the "ALJ was not required to mention explicitly, in his ruling, each detail of [the claimant's] testimony, such as the need to take off weeks at a time from work." *Id.* at 520 (citing *Lambert*, 980 F.3d at 1277). The Ninth Circuit held that the ALJ did not err because he "specifically cited [the claimant's] written statements and testimony as among the items he had 'carefully consider[ed],' and he gave specific reasons why he did not credit [the claimant's] claims concerning the 'limiting effects' of [the claimant's] symptoms, including his 'back and knee pain.'" *Id.* at 519-20. Those reasons included inconsistent objective medical evidence, minimal treatment before the claimant's date last insured, which the ALJ found did not support the claimant's "subjective complaints," and a non-examining physician's conflicting opinion. *Id.* at 520.

Similarly, in *Cooper v. Kijakazi*, No. 20-15935, 2022 WL 1553170, at *1 (9th Cir. May 17, 2022), "the ALJ summarized [the claimant's] relevant testimony concerning her key asserted limitations and stated that he found 'these statements of extremely limited physical capacity inconsistent with the overall record.'" *Id.* In holding that the ALJ satisfied the clear and convincing reasons standard, the Ninth Circuit explained that "in assessing [the claimant's] testimony, the ALJ properly concluded that the objective medical evidence did not support the degree of limitation that [the claimant] claimed," and that "[a]lthough [the claimant] would have preferred a more granular point-by-point refutation of her testimony, '[the Ninth Circuit's] cases do not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits.'" *Id.* (quoting *Lambert*, 980 F.3d at 1277).

Like the ALJs in *Young* and *Cooper*, the ALJ's findings here satisfy the Ninth Circuit's specificity requirement. The ALJ noted that in Plaintiff's disability and function reports and

during the administrative hearing, Plaintiff reported "multiple disabling impairments, including fibromyalgia, PTSD, and anxiety," and difficulties with a number of mental and physical activities. (Tr. 18, citing Tr. 253-62, 265-72 and referring generally to hearing testimony at Tr. 31-45.) Thereafter, the ALJ explained, among other things, that although the record documented "a history of PTSD, depression and anxiety," the "evidence does not substantiate that [Plaintiff's] allegations of mental disabling impairments are as severe as [she] allege[s]." (*Id.* at 20.)

In support of this finding, the ALJ cited certain results and observations from a report that an examining psychologist, Chloe Lee-Zorn, Psy.D. ("Dr. Lee-Zorn"), issued on February 26, 2019, approximately four months after Plaintiff's amended alleged disability onset date. (*Id.*, citing Tr. 579-83; *see also* Ct. Tr. Index at 4; Tr. 33.) For example, the ALJ found it notable that Plaintiff informed Dr. Lee-Zorn that she stopped working for reasons unrelated to a mental or physical impairment: "Of note, [Plaintiff] reported that she decided to discontinue working to care for her [two] children." (*Id.*, citing Tr. 580; *see also id.*, showing that Dr. Lee-Zorn noted that Plaintiff "said that she stopped working (outside of the home) about [ten] years ago, and had decided to discontinue work to care for her [two] children (who have physical health issues)").

As the Commissioner appropriately points out (*see* Def.'s Br. at 3-4, ECF No. 17), the ALJ's finding about Plaintiff's reported reason she stopped working is a legally sufficient (and unchallenged) reason for discounting Plaintiff's symptom testimony. *See, e.g., Mioni v. Kijakazi,* No. 20-35652, 2021 WL 5861285, at *1 (9th Cir. Dec. 10, 2021) (holding that the ALJ "properly provided specific, clear and convincing reasons for discrediting [the claimant's] testimony about the severity of her symptoms," and stating that "the ALJ noted that [the claimant] stopped working . . . for reasons unrelated to her alleged impairments"). Although the record reveals

Plaintiff also reported that "medical reasons" caused her to stop working (*see* Tr. 1422, August 20, 2020, mental health intake), the ALJ concluded that the "evidence does not substantiate that [Plaintiff's] allegations of mental disabling impairments are as severe as alleged," and the ALJ reasonably found it "[o]f note" that Plaintiff reported that she stopped working for reasons unrelated to her impairments. (*See id.* at 20); *see also Owen v. Saul*, 808 F. App'x 421, 424 (9th Cir. 2020) (affirming the ALJ's decision to discount the claimant's testimony, and noting that the claimant at times reported that he stopped working for reasons unrelated his conditions).

In support of her finding that the "evidence does not substantiate that [Plaintiff's] allegations of mental disabling impairments are as severe as alleged," the ALJ also observed that Plaintiff "scored 28/30 on the Mini Mental Status Exam [during Dr. Lee-Zorn's examination], with Dr. Lee-Zorn noting that [Plaintiff] appeared to be of above low average intelligence." (*Id.* at 20.) This additional finding is also sufficiently specific and reasonable. *See Davis v. Kijakazi*, No. 21-35411, 2022 WL 2072656, at *1 (9th Cir. June 9, 2022) (holding that the ALJ satisfied the clear and convincing reasons standard, and noting that the ALJ "found that [the claimant's] mental health functioning was not as limited as she alleged" and "found that [the claimant's] performance on her mental status exams . . . conflicted with her subjective testimony").

Additionally, the ALJ observed that despite some of Dr. Lee-Zorn's "somewhat abnormal findings," Plaintiff "did not seek any mental health treatment from her amended onset date [of October 26, 2018] until August 20, 2020—a period of almost two years[.]" (Tr. 20, citing Tr. 1421.) The ALJ added that "[a]t that time, [Plaintiff] began counseling due to complaints of PTSD symptoms resulting from her car accident [on December 19,] 2019." (*Id.*, citing Tr. 1424; *see also* Tr. 871, 874, 876, 881, identifying December 19, 2019 as the accident date). The ALJ

also noted that Plaintiff pursued weekly counseling "through the end of October 2020[.]" (*Id.*) (citations omitted).

Plaintiff argues that ALJ erred in making the above finding because she failed to consider "the reason Plaintiff had a two-year break in mental health treatment." (Pl.'s Opening Br. at 134.) Plaintiff states that she took a two-year break from mental health treatment because her primary care physician, John Guerrero, M.D. ("Dr. Guerrero"), "advised against continued counseling due to her being traumatized by prior counseling," and "advise[d] returning" to treatment "[o]nly after Plaintiff's symptoms were interfering with her ability to leave the home, drive, and shop[.]" (*Id.*, citing Tr. 972 and Tr. 1027.) The Court finds Plaintiff's arguments unpersuasive.

The records Plaintiff cites reveal that on August 31, 2015, over three years before the amended alleged disability onset date of October 26, 2018, Dr. Guerrero stated that he did not "think [it was] useful for [Plaintiff] to continue with her current therapy plan." (Tr. 972.) Before doing so, Dr. Guerrero noted that Plaintiff "has had difficulty with counseling at Lifeworks" because she "found it quite traumatizing" and did not "feel she can make progress" given her Lifeworks provider's failure to "offer[] [her] much useful information." (*Id.*) Notably, however, Dr. Guerrero also explained that Plaintiff was "o/w [i.e., otherwise] functional," "doing acceptable at home, with her kids, [and] with school starting up," and "working [the] late shift." (*Id.*)

Furthermore, the Court notes that on May 1, 2018, about five months before issuing the above progress note, Dr. Guerrero stated that it was "[s]omewhat difficult to have a productive exam," and noted that Plaintiff was "not willing to participate in [behavioral health] at th[at] time" and he would "not modify [Plaintiff's] pain or [mental health] medications at th[at] time,

particularly for pain, given [that] . . . it [was] difficult to get her to [follow up] for [mental health] visits, other than what [he was] able to do in [his] limited time" as a primary care provider. (*Id.* at 358.)

About eight months earlier, on September 18, 2017, Dr. Guerrero noted that Plaintiff complained of anxiety, depression, and PTSD and "requested Xanax . . . [because it] helps her anxiety[.]" (*Id.* at 365.) Dr. Guerrero stated that Plaintiff did not "want to have to go to [behavioral health treatment because she feels] she is worse whenever she goes through counseling," and he was "concerned [about] chronic use and . . . dependence upon a potentially addictive medication without counseling," but "appreciated that counseling is traumatizing for [Plaintiff] and [would] try to find how to best address medications while limiting trauma." (Tr. 365.)

In the other record Plaintiff cites, which is dated May 12, 2020, Dr. Guerrero stated that Plaintiff "needs PTSD counseling" because of a "new PTSD trigger (MVA)," and because she reported that she "ends up re-living a lot of the [December 2019] accident," had "some difficulty . . . getting out of the house," had not "been able to drive at all," had "difficulty getting to the store," and was "crying a lot due to [her] depression[.]" (*Id.* at 1027-28.) Dr. Guerrero added that Plaintiff "need[ed] something . . . covered by [personal injury protection insurance]" but "[h]ad a bad experience with [Lifeworks] and [was] not willing to go through them again." (*Id.*)

When Plaintiff established treatment at Sequoia Mental Health Services on August 20, 2020, Plaintiff reiterated that her traumatizing counseling experience concerned a specific provider at Lifeworks: "[Plaintiff] reports that she briefly saw a therapist at Virginia Garcia [i.e., a facility where Dr. Guerrero worked,] around 3-4 years ago. [Plaintiff] also reports that she has

previously seen a therapist through LifeWorks, but states that this was a really bad experience. [Plaintiff] states[,] 'My therapist basically wouldn't say anything throughout the session, then at the end she'd say I'm sorry, but I wouldn't know what to do either in your situation.'" (*Id.* at 1421-22; *see also id.* at 1422, identifying Plaintiff's "PCP [as] John Guerrero at Virginia Garcia").

Given these records, the Court finds unpersuasive Plaintiff's argument that the treatment gap that the ALJ identified was due to Dr. Guerrero's 2015 "advice[]." The ALJ's reliance on the identified gap was reasonable, and the Court may not second-guess it. Dr. Guerrero's records suggest that he believed that Plaintiff should engage in mental health treatment, and do not foreclose the possibility that Plaintiff could have done so with a different provider or at a different clinic. *See Davis*, 2022 WL 2072656, at *1 (holding that the ALJ satisfied the clear and convincing reasons standard, and noting that "the ALJ found that [the claimant's] mental health functioning was not as limited as she alleged because she had made inconsistent efforts to seek clinical treatment").

For these reasons, the Court finds that the ALJ satisfied the Ninth Circuit's specificity requirement and provided clear and convincing reasons for discounting Plaintiff's testimony.[2]

### 2.    The ALJ's Remaining Reasons

As to her physical impairments, Plaintiff focuses largely on her fibromyalgia diagnosis, authorities addressing fibromyalgia's unique symptoms and diagnostic methods, *see, e.g.*, *Revels v. Berryhill*, 874 F.3d 648, 656-69 (9th Cir. 2017) (addressing the relevant fibromyalgia criteria

---

[2] Plaintiff notes that Dr. Lee-Zorn stated that it was "possible that [Plaintiff] may be able to function in certain work environments with appropriate accommodations." (Pl.'s Br. at 5, quoting Tr. 582.) Dr. Lee-Zorn also stated that "[d]espite [her] reported symptoms of anxiety and physical health issues, [Plaintiff] endorsed that she is able to work from home currently [in 2019]." (Tr. 582.)

and Social Security ruling), and evidence that she believes undermines the ALJ's reliance on "unremarkable" objective evidence and decision to discount Plaintiff's "alleged pain." (Pl.'s Br. at 10-13.)

"It is true that in fibromyalgia cases, medical evidence must be considered in light of its 'unique symptoms and diagnostic methods.'" *Franchino v. Kijakazi*, No. 21-17140, 2022 WL 16548014, at *2 (9th Cir. Oct. 31, 2022) (quoting *Revels*, 874 F.3d at 662). However, it is also true that in fibromyalgia cases, a claimant's statements that contradict the medical record or are inconsistent with her actions undermine her self-reports and weigh in favor of an ALJ's decision to discount testimony. *See id.* (addressing a claimant's fibromyalgia symptom testimony and explaining that "[h]ere, however, [the claimant's] statements that contradict the medical record or are inconsistent with her actions detract from her [self-reports] and weigh in favor of the ALJ's decision").

The record reflects that Plaintiff was diagnosed with fibromyalgia and had positive tender point examinations. (*See* Tr. 356, July 31, 2018, diagnosing fibromyalgia, noting that Plaintiff exhibited "15 of 18 tender [fibromyalgia] points," emphasizing the "important[]" point that Plaintiff's physician believed that medications are "not typically effect[tive]" for fibromyalgia and Plaintiff "might have better success with exercise, acupunc[ture] or perhaps [physical therapy]," recommending that Plaintiff consider discontinuing a stimulant and "begin exercise and try acupuncture," and noting that Plaintiff was "reluc[tant] to exercise but [was] interested in trying acupuncture if it [was] affordable"; Tr. 587-88, March 11, 2019, diagnosing fibromyalgia and noting that "[p]alpation of the classic fibromyalgia tender points show[ed] that 13/18 [were] positive"). The ALJ determined that Plaintiff's fibromyalgia was a severe impairment. (*Id.* at 15.)

In discounting Plaintiff's testimony, however, the ALJ observed that the record included a February 2019 (i.e., post-amended onset date) report that Plaintiff stopped working for reasons unrelated to her impairments. The authorities cited herein demonstrate that such a report undermines a claim of disability and weighs in favor of the ALJ's decision to discount a claimant's testimony.

Furthermore, Plaintiff fails adequately to address the ALJ's finding that "[m]ost of [her physical] treatment during the relevant time period relate[d] to her complaints of facial problems," which the ALJ determined were not severe. (Tr. 19.) This finding and interpretation of the record is reasonable and detracts from Plaintiff's claim of debilitating fibromyalgia pain during the relevant time period. (*See* Tr. 690-92, May 22, 2019, Plaintiff's "drug of abuse screen was positive for cannabinoids" and an emergency room physician was "uncertain of the exact etiology of [Plaintiff's] symptoms" because none of the objective medical evidence was "consistent with [her report of] air in her [head and neck] tissues," and stated that Plaintiff did not "require[] further evaluation" and could be discharged; *id.* at 1354-55, July 2, 2019, Plaintiff's provider noted that Plaintiff presented with "multiple complaints involving the head and neck and oral cavity," Plaintiff had "been to urgent care and the [emergency department] multiple times and has had [a computed tomography scan of her] neck with no abnormalities"; *id.* at 680-823, August 28, 2019, Plaintiff visited the emergency room complaining of shortness of breath and a feeling of "fullness in her neck and throat as if she has 'air in her neck,'" the first responders stated "there was concern for some sort of intoxication among [Plaintiff] houseguests," several of whom were "taking photos of her mouth," Plaintiff "denie[d] any drug or alcohol use th[at] evening," Plaintiff's drug screen was positive for "[c]annabinoids," and an electrocardiogram, chest x-ray, complete blood count, and metabolic panel were largely

unremarkable and produced a "negative work-up"; *see also id.* at 909-10, January 16, 2020, Plaintiff presented with "pain in her head, neck, upper back, left shoulder/arm, left wrist, chest and TMJ area," and "denie[d] having any pain in the affected regions in the [six] months prior to the [December 19, 2019] accident"; *id.* at 883, February 17, 2020, less than one year before the ALJ issued her decision and several years after Plaintiff filed her applications for disability benefits, Plaintiff "presented . . . seeking evaluation and treatment of injuries reportedly sustained during [a December 19, 2019] auto collision," complained primarily of "headaches, upper neck pain bilaterally, lower neck pain, upper back pain bilaterally, right shoulder blade pain, left shoulder blade pain, pain [in her] [c]hest, [and bilateral] [j]aw pain," and stated that her "[s]ymptoms started after being involved in [the December 19, 2019] motor vehicle collision").

The Court also finds unpersuasive Plaintiff's alternative interpretation of "unremarkable" objective evidence on which the ALJ relied on. (*See* Pl.'s Br. at 12, focusing largely on the ALJ's reliance on "unremarkable" cervical spine imaging and nerve conduction studies). The Court finds that the ALJ's findings were reasonable (*see* Tr. 19-20) and supported by substantial evidence. (*See id.* at 831-32, January 22, 2020, nerve conduction studies "were within normal limits" and there was "no electrodiagnostic evidence of a peripheral nerve abnormality," including "peripheral neuropathy"; *id.* at 1025, February 12, 2020, Dr. Guerrero, a primary care physician, addressed Plaintiff's "disability application questions" and "suggested that [Plaintiff's] greatest likely disability is her [mental health] issues related to severe childhood trauma"; *id.* at 943, March 10, 2020, a magnetic resonance imaging ("MRI") of Plaintiff's cervical spine revealed "[m]oderate broad-based right paracentral disc protrusion and mild broad-based disc bulge with small central annular tear or fissure at C5-6 resulting in minimal right anterior spinal cord impingement," a "[s]mall broad-based central disc protrusion at C4-5

and C6-7," a "[s]mall right foraminal disc protrusion at C3-4," and "[m]ild supra odontoid soft tissue edema"; *id.* at 952, May 31, 2020, Plaintiff's provider noted that Plaintiff's "[b]rain MRI . . . [was] benign, other than sinus opacification, [and Plaintiff] ha[d] continuity with [an] ENT"; *id.* at 1269-74, June 22, 2020, a pain center physician detailed unremarkable cervical spine x-ray and MRI results before stating that he told Plaintiff that "the etiology of her pain [was] unclear").

Given this evidence and the ALJ's findings, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's testimony. *See Guthrie v. Kijakazi*, No. 21-36023 2022 WL 15761380, at *1-2 (9th Cir. Oct. 28, 2022) (affirming the ALJ's denial of benefits and explaining that "[w]hile the evidence could have supported contrary findings, substantial evidence supports the ALJ's conclusion") (citation omitted); *Roberts v. Berryhill*, 734 F. App'x 489, 491 (9th Cir. 2018) ("As required by the [Social Security] Ruling[] [on fibromyalgia], the ALJ considered the full longitudinal record. Unlike [the claimant in *Revels*], who sought consistent medical treatment for debilitating [fibromyalgia] pain, . . . [there are] unexplained gaps in treatment [that] support[ed] [the] ALJ's credibility determination.").

## II.    LAY WITNESS TESTIMONY

Plaintiff argues that the ALJ erred by failing to address the lay witness testimony provided by Plaintiff's sister, Stacey F. (Pl.'s Br. at 8, 16-17.) There is no dispute the ALJ did not explicitly address Stacey F.'s third-party function report. (*Compare* Pl.'s Br. at 16-17, *with* Def.'s Br. at 6-7, reflecting that the Commissioner does not dispute Plaintiff's assertion; *see also* Tr. 16-17, 19-21, 292-99, setting forth the relevant portions of the ALJ's decision and Stacey F.'s report).

///

Plaintiff argues that the ALJ's failure to do so amounted to harmful error because Stacey F. "identified limitations that Plaintiff did not allege and the ALJ's reasons for rejecting Plaintiff['s] [testimony] do not apply with equal force to [Stacey F.'s lay witness] testimony." (Pl.'s Br. at 17.) Plaintiff argues (in the next section of her brief) that the ALJ's VE hypothetical failed to "include the visual limitations, pain limitations, the weakness and fatigue, typing difficulties, and attention and concentration difficulties identified by [Stacey F.]" (*Id.*) The record, however, reflects that Plaintiff provided testimony and self-reports on these topics and limitations. (*See* Tr. 33-45, Plaintiff's hearing testimony; *id.* at 265-72, Plaintiff's adult function report; *id.* at 341-1448, Plaintiff's reports to medical providers and related records).

Given the overlap between Plaintiff's testimony and self-reports and Stacey F.'s lay witness testimony, and the ALJ's clear and convincing reasons for discounting Plaintiff's testimony, the ALJ's failure specifically to address Stacey F.'s testimony was harmless error. *See De Mello v. Kijakazi*, No. 22-35111, 2022 WL 17583054, at *1 (9th Cir. Dec. 12, 2022) ("[A]ny claimed error was harmless because, given the similarity between [the lay witness's] report and [the claimant's] testimony, the lay testimony did not alter the ultimate nondisability determination.") (simplified); *Jacob v. Berryhill*, 756 F. App'x 709, 711-12 (9th Cir. 2018) (noting that the ALJ provided clear and convincing reasons for discounting the claimant's testimony, which "overlap[ped] substantially with that of [the lay witness]," and holding that "any error was harmless" in discounting the lay witness testimony because the ALJ's reasons for rejecting the claimant's testimony applied with equal force to the lay witness); *Burkett v. Berryhill*, 732 F. App'x 547, 553 (9th Cir. 2018) (holding that the ALJ "did not err by declining to discuss" lay witness testimony, and that any error was harmless because the lay "testimony described the same limitations as [the claimant's properly discounted] testimony") (simplified).

## III.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

As the parties agree (*see* Pl.'s Br. at 14; Def.'s Br. at 5), the new regulations apply here because Plaintiff filed her applications for benefits after March 27, 2017 (Tr. 13). *See Woods v. Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022) (observing that "[t]he new regulations apply to [a claimant's case if] she filed her claim on or after March 27, 2017," and that the new regulations displace the "irreconcilable" and "incompatible" specific and legitimate reasons standard); *see also Petritz v. Kijakazi*, No. 22-35155, 2022 WL 17592191, at *1 (9th Cir. 2022) (explaining that "the standard under the new regulations . . . d[id] not apply to [the claimant's] case because [he] filed his application for benefits before [March 27,] 2017" (citing *Woods*, 32 F.4th at 789)).

Under the new regulations, "'[t]he most important factors' that [an ALJ] considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)). Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence,'" *id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)), and consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ "must 'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [he] considered the supportability and consistency factors' in reaching [his] findings.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

The new regulations reflect that an ALJ is not required to make specific findings regarding a medical source's relationship with the claimant, i.e., "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source

has examined the claimant or merely reviewed the claimant's record." *Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(3)(i)-(v)). Nor is an ALJ required to make findings regarding specialization or "other factors that tend to support or contradict a medical opinion[, such as the medical source's] familiarity with the other evidence in the claim or . . . understanding of . . . disability program[] policies and evidentiary requirements." 20 C.F.R. §§ 416.920c(b)(2), 1520c(c)(4)-(5).

If, however, an ALJ finds that medical opinions "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will articulate how [he] considered the . . . factors in paragraphs (c)(3) through (c)(5)," *id.* § 416.920c(b)(3), i.e., the medical source's relationship with the claimant, specialization, and facts that support or contradict the medical opinion. *Id.* § 416.920c(c)(3)-(5); *see also Woods*, 32 F.4th at 792 (making a similar observation regarding the factors in paragraphs (c)(3) through (c)(5)).

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

///

### B.    Analysis

Plaintiff argues that the ALJ committed harmful error in discounting the opinion of the consultative examiner, Dr. Ogisu. (Pl.'s Br. at 8, 13-16.) As explained below, the Court finds that substantial evidence supports the ALJ's decision to discount Dr. Ogisu's opinion, and even if the ALJ did err, any error was harmless because substantial evidence supports the ALJ's finding of no disability. *See generally Rice v. Saul*, 817 F. App'x 395, 398 (9th Cir. 2020) ("The [ALJ's VE] hypotheticals were not incomplete simply because the RFC finding did not account for all of [the claimant's] alleged limitations—the ALJ included the limitations she found supported by the record. And even assuming that the ALJ omitted some limitations, any error was harmless because substantial evidence supports the ALJ's finding of no disability."); *Shauna O. v. Kijakazi*, No. 3:20-cv-01149-SB, 2021 WL 3081057, at *9 (D. Or. July 21, 2021) ("The Court concludes that the ALJ did not commit harmful error in discounting [the nurse practitioner's] opinion because she does not describe any limitations beyond those described by evidence that the ALJ reasonably discounted (i.e., [the claimant's] testimony and [two treating psychologists'] opinions).").

Plaintiff presented for a comprehensive musculoskeletal examination with Dr. Ogisu on March 11, 2019. (Tr. 584-89.) Plaintiff reported that she "does not engage in any physical exercise," she performs "light housework" but receives some assistance with certain unspecified household chores, she was a "customer support specialist," she was "self-employed at home," she "work[ed] most days in front of a computer . . . [, which] involves a frequent or constant level of typing," and her activities include "working, taking naps, picking up her daughter from school, and preparing meals for her daughter." (Tr. 585.) Dr. Ogisu diagnosed Plaintiff with, among other things, fibromyalgia and noted that "[p]alpation of the classic fibromyalgia tender points show[ed] that 13/18 [were] positive." (*Id.* at 587-88.) Dr. Ogisu opined that during an

eight-hour workday, Plaintiff could sit for more than six hours, stand and/or walk for a

"combined [total of] up to [six] hours," lift and carry fifteen pounds occasionally and "at least

[five] pounds but less than [ten] pounds frequently," and frequently handle and reach. (*Id.* at

588.)

      Near the end of her decision and after discussing at length Plaintiff's symptom testimony,

unremarkable record evidence, and conflicting and "somewhat persuasive" opinion evidence, the

ALJ explained that she found Dr. Ogisu's opinion "only somewhat persuasive." (*Id.* at 21.) In

support of this finding and her decision to discount Dr. Ogisu's opinion, the ALJ stated that the

record did "not support finding that [Plaintiff] has any limitations handling," because, in the

ALJ's view, "[s]uch opined limitations are inconsistent with the rest of the medical evidence of

record." (*Id.*)

      Plaintiff argues that the ALJ's "vague[]" reference to conflicting medical evidence, and

failure specifically to identify evidence that "detracted from Dr. Ogisu's opinion, was "clear

error." (Pl.'s Br. at 15.) The Court disagrees. The ALJ already discussed Dr. Ogisu's findings in

the course of discounting Plaintiff's symptom testimony (*see* Tr. at 19), and in the doing so, the

ALJ addressed such conflicting evidence, including, but not limited to, Plaintiff's unremarkable

cervical spine imaging and nerve conduction findings, the fact that Plaintiff focused a large

amount of her relevant treatment on non-severe "complaints of facial problems," and Plaintiff's

post-onset date report that she stopped working due to reasons unrelated to her claim of

disability. (*Id.* at 19-20.)

      Further, Plaintiff does not challenge the ALJ's decision to partially credit, and find

"generally consistent with the medical evidence of record available" as of March 28 and

December 27, 2019, the state agency medical and psychological consultants' opinions. (*See* Pl.'s

Br. at 8-19; Tr. 21.) That is significant because these state agency opinions do not support most of the portions of Dr. Ogisu's March 11, 2019 opinion that Plaintiff suggests should be credited. (*See* Pl.'s Br. at 17, arguing that the ALJ failed to account for Dr. Ogisu's lifting and handling limitation; *compare* Tr. 79-80, 99, reflecting that the state agency physicians opined that Plaintiff can lift and carry twenty pounds occasionally and ten pounds frequently and does not suffer from any manipulative limitations; *id.* at 588, showing that Dr. Ogisu opined that Plaintiff can lift and carry up to fifteen pounds occasionally and "at least [five] but less than [ten] pounds frequently" and frequently handle).

Plaintiff also emphasizes that the ALJ acknowledged that Plaintiff's December 2019 car accident warranted greater limitations than those assessed by the state agency consultants. (Pl.'s Br. at 16, citing Tr. 21.) That is true, but this acknowledgment was limited to the ALJ's decision to credit some (but not all) of Plaintiff's post-December 2019 testimony about neck problems and PTSD. (*Compare* Tr. 21, reflecting that the ALJ found the state agency medical and psychological consultants' opinions "somewhat persuasive" and "generally consistent" with the majority of the record, but also found "the greater limitations assessed herein to be supported by [Plaintiff's] testimony and allegations, including complaints of neck problems and PTSD following a [December 2019] accident," *with id.* at 18, formulating an RFC that limited Plaintiff to "no teamwork," public contact, or climbing of ladders, ropes, or scaffolds, occasional co-worker contact, balancing, stooping, crouching, crawling, and kneeling, and jobs that involve "simple, routine[, and] repetitive tasks with few changes and a reasoning level of [one to two]", *and id.* at 80, 99, opining that Plaintiff can occasionally climb ladders, ropes, or scaffolds and frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, *and id.* at 81-82, 102, opining that Plaintiff needs to be limited to "simple, routine tasks [that are not] complex,"

"[r]estricted from public and limited to no more than [occasional] co-worker interaction," and "restricted to a very predictable work setting [with] very minimal need for independent decision-making").

The Court must review the ALJ's evaluation of Dr. Ogisu's opinion, and ultimate finding that Plaintiff is not disabled, for substantial evidence (i.e., more than a mere scintilla of evidence and less than a preponderance). *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf*, 2022 WL 17592194, at *1 (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

The evidence and findings discussed herein amount to substantial evidence. Therefore, and regardless of the reasonableness of Plaintiff's alternative interpretation of the record and whether the ALJ erred in some respect in discounting Dr. Ogisu's opinion, the Court must affirm.

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 10th day of March, 2023.

*Stacie F. Beckerman*

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge